**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DAVID QUINN,

                        Plaintiff,

    v.                                    No. 03-CV-1339
                                                 (FJS/DRH)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

---

**APPEARANCES:**                                 **OF COUNSEL:**

STEPHEN J. MASTAITIS, JR., ESQ.
Attorney for Plaintiff
1412 Route 9P
Saratoga Springs, New York 12866

HON. GLENN T. SUDDABY           WILLIAM H. PEASE, ESQ.
United States Attorney for the           Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Post Office Box 7198
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff David Quinn ("Quinn") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act. Quinn moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 7, 8. For the reasons which follow, it is recommended that the Commissioner's

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

decision be affirmed.

## I. Procedural History

On April 28, 2000, Quinn filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 179-80.[2] That application was denied after the initial determination and following reconsideration. T. 88-96. Quinn requested a hearing before an administrative law judge (ALJ), T.103, which was held before ALJ Thomas P. Zolezzi, Jr. on May 15, 2001. T. 23-54. Quinn was not represented by counsel. T. 23. In a decision dated June 25, 2001, the ALJ denied Quinn's claims. T.116-23. On January 25, 2002, the Appeals Council remanded the ALJ's decision for further review. T. 126-29. On October 23, 2002, a hearing was held before ALJ Thomas P. Zolezzi. T. 55-82. Quinn was represented by counsel. T. 55. In a decision dated February 27, 2003, the ALJ again denied Quinn's claims. T. 7-19. Quinn's request for review was denied on September 9, 2003, thus making the ALJ's findings the final decision of the Commissioner. T. 4-6. This action followed.

## II. Contentions

Quinn contends that the ALJ erred when he failed to accord the proper weight to his treating physician, failed to consider his subjective complaints, and that there is not substantial evidence in the record to support a finding that he could perform his past relevant work. The Commissioner contends that there is substantial evidence in the record

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 6.

to support a finding that Quinn was not disabled.

### III. Facts

Quinn is now forty-nine years old, previously worked as a painter, laborer, and driver, and has a high school diploma. T.83, 187-201. Quinn alleges that he became disabled on November 22, 1996 due to irritable bowel syndrome (IBS)[3] and anxiety. T. 179, 186.

### IV.  Standard of Review

#### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2002).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2002).

---

[3] "A chronic noninflammatory disease characterized by abdominal pain, altered bowel habits consisting of diarrhea or constipation or both, and no detectable pathologic change." It is a "common disorder with a psychophysiologic basis." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1632 (28th ed. 1994) [hereinafter DORLAND'S].

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2005).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

The reviewing court must determine if the commissioner has applied the proper legal standards and if the decision is supported by substantial evidence. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000). The ALJ must elaborate specific factors to allow the reviewing court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). If the Commissioner's finding is supported by substantial evidence, it is conclusive and on review, the court cannot substitute its interpretation of the administrative record for that of the Commissioner. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998); Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V. Discussion

### A. Medical Evidence

Quinn complained of chronic diarrhea and abdominal pain since gallbladder surgery in 1990. T. 233, 301, 677. Quinn was treated by Dr. James Wright at Schroon Lake Health Center for abdominal pain since December 1992 and for depression and anxiety since January 1997. T. 327-29. Dr. Wright diagnosed Quinn with IBS, hyperlipidemia,[4] and anxiety and indicated that Quinn could sit up to four hours continuously and for a total of eight hours, stand up to two hours continuously and for a total of six hours; walk up to one hour continuously and for a total of six hours, had limitations with lifting and carrying more

---

[4] "[A] general term for elevated concentrations of any or all of the lipids in the plasma." DORLAND'S 795-96.

5

than twenty-five pounds, and that Quinn required access to a bathroom at that time. T. 489-90.

Dr. Howard Fritz, a gastroenterologist, treated Quinn for abdominal distress from April 1996 to February 2000. T. 240-51, 279-305.  H. pylori antibody, liver enzymes studies, endoscopy, and stool studies were negative, a minimal inflammatory change was noted but was not of significant pathology, an upper gastro-intestinal ("GI") series demonstrated a duodenal ulcer,[5] and rectal examination revealed solid hemoccult negative stools. T. 285-86, 299. On February 4, 1997, a colonoscopy revealed polyps, status post-polypectomy, and there was a question of low grade colitis.[6] T. 248. Computed Topography ("CT") scans completed on October 6, 1997 and November 24, 1998  were unremarkable with no evidence of a small bowel mass. T. 288-89.

On February 10, 2000, a colonoscopy was performed and the impression was mild diverticulosis[7] and four small polyps were removed. T. 243.  Dr. Fritz opined that Quinn's abdominal symptoms were likely to be functional in nature, noted the discrepancy between the self-reported diarrhea and the firm stool noted on rectal examination, and concluded that he doubted that there was a significant underlying disease process. T. 287, 298.

Quinn was treated at the emergency room for abdominal pain on January 10, 2001.

---

[5] An "ulceration of the mucous membrane of the . . . duodenum . . . caused by the action of the acid gastric juice." DORLAND'S 1771.

[6]  An "inflammation of the colon." DORLAND'S 352.

[7] The presence of "a circumscribed pouch or sac of variable size occurring normally or created by herniation of the lining mucous membrane through a defect in the muscular coat of a tubular organ." DORLAND'S 499-500.

An X-ray study of Quinn's abdomen was unremarkable and the diagnosis was post-cholecystectomy surgery syndrome. T. 376-82, 403-06. On November 8, 2001, Quinn was examined by Dr. Paul Bachman for a disability evaluation, who noted that the working diagnosis was IBS and that Quinn had no limitations. T. 393, 491-92.  Dr. James Hindson examined Quinn on September 11, 2001. The impression was IBS and Dr. Hindson speculated that Quinn's diarrhea might not occur as badly as claimed by Quinn.  T. 677-78. Dr. George Wooton conducted a consultative examination of Quinn on November 28, 2001, diagnosed Quinn with IBS and opined that Quinn had no significant limitations. T. 679-82.

Quinn was treated at the Behavioral Health Outpatient Center at Glens Falls Hospital from March to December, 1999 by John McClosky, Ph.D. T. 254-73. On March 5, 1999, Quinn appeared moderately depressed and anxious, there was no fixed delusional thinking, memory was intact, intelligence appeared average, insight and judgment appeared fair, and Quinn was cooperative, alert, and fully oriented. T. 233-36, 272. Quinn continued to have anxiety attacks, his sleep and appetite were good, he denied any depression, suicidal ideation, hallucinations, or delusions, was stable and relevant, showed improvement, and was taking Klonopin and Elavil. T. 254-98. Dr. McCloskey diagnosed Quinn with deferred history of panic disorder without agoraphobia,[8] major depression to a general medical condition, and alcohol abuse in remission. T. 255, 310.

On March 15, 1999, Preston Dess conducted a psychiatric medication evaluation of Quinn, concluded that Quinn had a major depressive disorder due to chronic medical condition, and was unable to sustain any type of long or short-term employment. T. 238.

---

[8] [A]n intense, irrational fear of open spaces." DORLAND'S 39.

7

Dees noted that Quinn's thought process was goal-directed with no formal thought disorder, no psychosis, no hallucinations, no fixed delusional system, cognition and memory were grossly intact, and Quinn was alert and oriented times three. T. 238.

On June 16, 2000 and January 7, 2002, Gina Scarano-Osika conducted psychiatric evaluations of Quinn and the impression was Post-Traumatic Stress Disorder (PTSD) in early remission, panic disorder with agoraphobia, personality disorder, and somotization disorder.[9] T. 333-35, 687-90. Quinn was of average intelligence, insight and judgment were poor, he was fully oriented, and there were no symptoms of psychosis, delusions, hallucinations, or obsessions. T. 333-35. Scarano-Osika recommended continuous mental health treatment. T. 690.

On January 11, 2001, psychologist Matthew R. Merrens administered the Millon Clinical Multiaxial Inventory test.[10] T. 370. The Millon personality record was suggestive of a possible diagnosis of major depression, recurrent, moderate-to-severe without psychotic features, adjustment disorder with anxiety, somatization disorder, and a depressive personality disorder with dependent personality traits, self-defeating traits, and schizo-personality features. T. 372. Dr. Paul Etu evaluated Quinn on August 2, 2002 and the diagnosis was major depressive disorder, panic disorder with agoraphobia, and generalized anxiety. T. 588. Dr. Etu found that Quinn had slight-to-moderate limitations in activities of

---

[9] "[T]he conversion of mental experiences or states into bodily symptoms." DORLAND'S 1544.

[10] "An inventory (prepared by the patient) intended to provide information for a profile of the personality style of the subject (that might explain the basis of a mental disorder)."4-M SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE 4753

8

daily living, maintaining social functioning, a frequent degree of limitation in deficiencies of concentration, persistence or pace, and continual episodes of deterioration or decompensation in work settings. T. 588-90.

### B. Treating Physician's Rule

Quinn contends that the ALJ erred when he discounted the opinion of Dr. Dees, a treating physician. The Commissioner contends that the ALJ accorded the proper weight to Dr. Dees' opinion.

> When evaluating a claim seeking an occupational disability annuity the hearing officer must look at the (1) objective medical facts and clinical findings, (2) treating physician's diagnoses and other medical opinions based on the medical facts, (3) subjective evidence of disability and pain related by claimant, and corroborating or contravening evidence of these conditions, if any, and (4) the claimant's educational background, age, and work record.

Harris v. Railroad Retirement Bd., 948 F.2d 123, 126 (2d Cir. 1991) (citing Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)). Under the regulations, a treating source's opinion is entitled to "controlling weight" if the Commissioner "find[s] that [it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); Shaw, 221 F.3d at 134. Before discounting the opinion of a treating source, however, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to afford that opinion: (1) the frequency of examination and the length, nature, and extent of

9

the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors.  Alder v. Apfel, No. 99-CV-136, 1999 WL 1458368, at *4 n.3 (N.D.N.Y. Aug. 13, 1999) (Mordue, J.) (citing Schaal, 134 F.3d at 504).

    The ALJ did not give great weight to Dr. Dees' opinion since Quinn had not seen him since 1998, although the report was dated March 1999. T. 12. Dr. Dees treated Quinn only one time for a medication evaluation, concluded that Quinn had a major depressive disorder due to a chronic medical condition, and was unable to sustain any type of long or short-term employment. T. 238. However, Dr. Dees also noted that Quinn's thought processes were goal-directed, there was no formal thought disorder, no psychosis, no hallucination, no fixed delusional system, cognition and memory were grossly intact, although Quinn clearly displayed evidence of affective depression.  Dr. Dess cannot be considered a treating source as he only conducted one psychiatric evaluation for the purposes of medication. In addition, his opinion is not consistent with other opinions in the record regarding Quinn's mental impairment.

    While John McClosky, Ph.D., a treating source, found that Quinn had moderate limitations with respect to mental functioning, he also indicated that Quinn should be reevaluated in three months. T. 319-20. On reevaluation, Quinn reported that he was relatively stable and showed improvement. T. 254. On March 3, 2000, Quinn appeared for completion of an employability form. T. 309-10.  Dr. McCloskey found that Quinn was cooperative, alert, and fully oriented, thoughts were coherent and relevant, there were no psychotic symptoms, memory and insight were grossly intact, and judgment appeared fair. T. 310. The diagnosis was a history of panic disorder with agoraphobia, major depression

due to a general medical condition, and alcohol abuse in remission. T. 310.

Gina Scarano-Osika found Quinn suffered from PTSD in early remission, panic disorder with agoraphobia, personality disorder, and somotization disorder but gave no opinion as to any restrictions. T. 333-35, 687-90. The Millon personality record was merely suggestive of the possible diagnosis listed and gave no opinion as to any mental limitations. T. 372. Dr. Merrens, who administered and interpreted the test, was a consulting psychiatrist. T. 12. Dr. Etu found that Quinn had slight-to-moderate limitations in activities of daily living, maintaining social functioning, frequent degree of limitation in deficiencies of concentration, persistence or pace, and continual episodes of deterioration or decompensation in work settings. T. 588-90.

In addition, Dr. Dees' opinion is not consistent with the opinions of non-examining sources regarding Quinn's mental impairment. Dr. Horenstein, a consulting physician, found that the record did not definitely establish the presence of a true psychiatric impairment and that Quinn did not have anything other than slight mental limitations. T. 582-83. Dr. Horenstein's opinion, although not that of a treating physician, is consistent with the other opinions in the record, including Dr. Dees' comments that processes were goal-directed, there was no formal thought disorder, no psychosis, no hallucinations, no fixed delusional system, and cognition and memory were grossly intact.

This opinion is also consistent with non-examining source opinions. A mental residual functional capacity (RFC) assessment form completed on August 18, 2000 found that Quinn was limited in the ability to understand and remember detailed instructions, to carry out detailed instructions, maintain attention, and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual, to

11

respond appropriately to changes in a work setting, and to set realistic goals or make plans independently of others. T. 344-56. A mental RFC assessment completed on February 5, 2002 found moderate limitations in sustained concentration and persistence, social interaction, and adaption. T. 691-708.

Quinn also contends that the ALJ improperly discounted the opinions of Drs. Sanders, Etu, and Scarano-Osika in their diagnoses of IBS and depression. Drs. Etu and Scarano-Osika evaluated Quinn only regarding his mental impairment, did not make findings as to Quinn's limitations, and are consistent with the ALJ's finding. Sanders, a physician's assistant, completed an employability assessment form which indicated that Quinn was not capable of gainful employment at that time. T. 311-32. Sanders indicated that Quinn suffered from IBS and that he could not presently work due to this and panic attacks. T. 312. However, a physician's assistant is not an acceptable medical source and such opinion is not necessarily entitled to such weight. See 20 C.F.R. § 416.913 (d)(1); Colondres v. Barnhart, No. 04-CIV-1841 (SAS), 2005 WL 106893, at *6 n. 97 (S.D.N.Y. Jan. 18, 2005). In addition, Sander's opinion is contradicted by other evidence in the record.

Dr. Fritz, a treating physician, found that Quinn's symptoms were functional in nature and that there was a discrepancy between the self reported diarrhea and the firm stool noted on rectal examination. T. 287, 298. Drs. Bachman, Wright, Hindson, and Wooton, examining physicians, found that Quinn had no significant limitations due to IBS. T. 365-69, 491-92. 495-96. A physical RFC assessment form completed on August 25, 2000 found that Quinn had no limitations due to IBS. T. 336-44. A physical RFC assessment completed on February 4, 2002 found that there were no significant limitations other than that Quinn needed to work near a bathroom. T. 709-16. On June 4, 2002, Dr.

12

Cohen, a non-examining physician, found that Quinn did not have any significant limitations. T. 566-74.

Therefore, the ALJ gave proper weight to the opinions of physicians and psychiatrists in the record. The Commissioner's finding in this regard should be affirmed.

### C. Credibility

Quinn contends that the ALJ failed properly to assess his credibility. The Commissioner contends that the ALJ's credibility assessment was supported by substantial evidence.

The basis for establishing disability includes subjective symptoms, even where the symptoms are unsupported by clinical or medical findings, provided that the underlying impairment can be "medically ascertained." 20 C.F.R. § 404.1529 (2003); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). An ALJ must consider all symptoms, including pain, and the extent to which these symptoms are consistent with the medical and other evidence. 20 C.F.R. § 404.1529 (2003); Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.). Pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain. Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).

It is the function of the Commissioner to assess the credibility of witnesses. Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997). The claimant's credibility and motivation as well as the medical evidence of impairment are used to evaluate the true extent of the alleged symptoms and pain, and the degree to which it hampers the claimant's ability to engage in substantial gainful employment. See Marcus v. Califano, 615 F.2d 23,

13

27 (2d Cir. 1979); Lewis v. Apfel, 62 F. Supp. 2d 648, 653 (N.D.N.Y. 1999) (Kahn, J). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i)  [The claimant's] daily activities;
>
> (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2004).

Quinn contends that the ALJ did not give proper weight to his subjective omplaints based on the results of the Millon Inventory and failed to use the opinion of Dr. Merrens, who administered the test. Here, the ALJ found that there did not appear to be significant, persistent, or pervasive limitations imposed by the Quinn's depressive symptoms. T. 15. The Millon Inventory was merely suggestive, not definitive, of possible diagnoses, and was based on subjective responses by Quinn.

The ALJ's rejection or discounting of Quinn's depressive symptoms are supported by the record.  There was no fixed delusional thinking, memory was intact, intelligence

14

appeared average, insight and judgment appeared fair, Quinn's sleep and appetite were good, he denied any depression, suicidal ideation, hallucinations, or delusions, was stable and relevant, and showed improvement. T. 233-36, 254-98. Quinn's thought processes were goal-directed with no formal thought disorder, no psychosis, no hallucinations, no fixed delusional system, cognition and memory were grossly intact, and Quinn was alert and oriented times three. T. 238, 333-35.

In addition, the ALJ took any mental limitations into account when questioning the vocational expert. The ALJ's hypothetical question was based on an individual who was limited to simple, entry-level, low-stress work with no planning, no decision-making, and no complex work, no required contact with co-workers, and little change in work-settings. T. 16. The vocational expert testified that Quinn could perform his past relevant work as a assembly worker which would be bathroom-accessible consistent with the ALJ's hypothetical question. T. 16.

As for IBS, there is substantial evidence to support the ALJ's finding that Quinn's subjective complaints may have been overstated. T. 17. While Quinn testified that he was afraid to leave the house, had problems standing, could walk for fifteen minutes, could sit for an hour, that he had as many as six-to-eight IBS attacks per morning, and could no longer do yard work, he also testified that he walked a mile to grocery shop, that he cleaned, and that he cooked at least six small meals per day. T. 31-47, 71, 209.

In addition, clinical studies and opinions of examining physicians support the ALJ's findings. GI series studies, stool studies, abdominal X-rays, colonoscopies, blood work, and CT scans were largely normal and revealed no significant abnormalities. T. 243-48, 376-82, 403-06. Dr. Wright indicated that Quinn had some limitations for sitting, standing, and

15

walking, and limitations with lifting and carrying more than twenty-five pounds, and that Quinn had frequent loose stools in the morning and needed access to a bathroom at that time. T. 489-90. Drs. Bachman, Hindson, and Wooton found that Quinn had no significant limitations. T. 393, 491-92, 679-82. In addition, Dr. Hindson speculated that Quinn's diarrhea may not occur as acutely as claimed by Quinn and Dr. Fritz noted the discrepancy between the self-reported diarrhea and the firm stool noted on rectal examination. T. 287, 298.

Therefore, the Commissioner's finding in this regard should be affirmed.

### D. Substantial Evidence

Quinn contends that there is not substantial evidence in the record to conclude that Quinn was capable of returning to his past relevant work.

As stated above, at the fourth step the Commissioner must inquire "as to whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work." Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2005). The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). Here, at step four, the ALJ found that Quinn was capable of performing his part relevant work as an assembly worker as well as other jobs cited by the vocational expert. T. 17. The vocational expert testified that a person with the characteristics and limitations of Quinn could do assembly line work, work as a chipper, a preparation person, insertion-machine operator, and inspector in a production line. T. 76-79.

Quinn contends that this finding was based on the opinions of Drs. Horenstein and Cohen, non-examining physicians. However, these opinions are consistent with the entire record, including clinical findings, opinions of both treating and non-treating physicians, and Quinn's testimony regarding his daily activities. There is no objective evidence that Quinn was required to use the bathroom as frequently as claimed. In addition, Dr. Hindson and Dr. Fritz questioned Quinn's reports of diarrhea. Quinn's description of daily activities are inconsistent with subjective complaints of frequent bowel movements were not supported by clinical evidence.

Quinn contends that the ALJ failed to consider the combination of all his impairments including IBS, depression, and adjustment disorder. Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. The next inquiry is whether a claimant retained the RFC to perform his or her past work. This inquiry must consider the combined effect of any impairments, whether or not they are severe, through the remaining steps. 20 C.F.R. § 404.1523 (2003); Dixon, 54 F.3d at 1031. The ALJ considered Quinn's history and treatments for IBS, depression, and anxiety. T. 11. The ALJ conducted an extensive review of Quinn's mental impairments and considered all of Quinn's limitations when posing the hypothetical question to the vocational expert. The ALJ considered the combination of all of Quinn's impairments.

Therefore, the ALJ's decision is supported by substantial evidence and the Commissioner's finding in this regard should be affirmed.

## VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 27, 2005
       Albany, New York

_David R. Homer_
United States Magistrate Judge