UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID QUINN,

                           **Plaintiff,**

        v.                                       6:03-CV-1339
                                                            (FJS/DRH)

**COMMISSIONER OF SOCIAL SECURITY,**

                           **Defendant.**
_____

**APPEARANCES**                                             **OF COUNSEL**

**OFFICE OF STEPHEN J. MASTAITIS, JR.**       **STEPHEN J. MASTAITIS, JR.,**
1412 Route 9P                                                 **ESQ.**
Saratoga Springs, New York 12866
Attorneys for Plaintiff

**OFFICE OF THE**                                        **WILLIAM H. PEASE, AUSA**
**UNITED STATES ATTORNEY**
100 South Clinton Street
Syracuse, New York 13261
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      Having exhausted his administrative remedies, Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Administrative Law Judge's ("ALJ") decision to deny him benefits. Magistrate Judge Homer reviewed the administrative record and the parties' submissions and, on December 27, 2005, issued a Report-Recommendation and Order in which

he recommended that this Court uphold the ALJ's findings and dismiss this action. Currently before the Court are Plaintiff's objections to that recommendation.

## II. BACKGROUND

Plaintiff is currently 50-years old.[1] He is a high-school graduate who has previously worked as a painter, a laborer, and a driver. According to the record, Plaintiff has a history of irritable bowel syndrome ("IBS"), depression, and anxiety.

On April 28, 2000, Plaintiff filed an application for Disability Insurance Benefits ("DIB" or "benefits") with the Social Security Administration ("the Administration"). Plaintiff asserts that he is disabled within the meaning of the Social Security Act ("the Act"). Specifically, he claims that, as a result of IBS and anxiety, he is unable to work and is, therefore, eligible for DIB.

After the Administration denied Plaintiff's claim as an initial matter and later on reconsideration, he requested a hearing before an ALJ. On May 15, 2001, the ALJ held a hearing and found that Plaintiff was not disabled.[2] On January 25, 2002, the Appeals Council remanded the ALJ's decision for further review and explanation. On October 23, 2002, the ALJ heard Plaintiff's application and argument for a second time. Upon further review, the ALJ once again

---

[1] Plaintiff was born on March 31, 1956.

[2] The ALJ issued a written decision explaining his findings on June 25, 2001.

found that Plaintiff did not meet the Act's standard for benefits.[3]  On September 9, 2003, the Appeals Council denied Plaintiff's request for additional review.[4]

### III. DISCUSSION

**A.     Standards of Review**

*1. Magistrate Judge's Recommendations*

When a magistrate judge files a report and recommendation, the district court makes a *de novo* determination of those portions of the report to which a party objects.  *See* 28 U.S.C. § 636(b)(1)(C).  The court may adopt, reject, or modify, in whole or in part, the magistrate judge's recommendations.  *See id.*

*2. Social Security Disability Determination*

Under 42 U.S.C. § 405(g), the court may reverse an ALJ's determination only upon a finding that the ALJ's decision was based upon legal error or was not supported by substantial evidence in the record.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003) (citations omitted).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* at 106 (quotation omitted).

---

[3] The ALJ issued a written decision explaining his findings on February 27, 2003.  This decision is currently before the Court.

[4] Plaintiff notes that he filed a third application for DIB, which was granted; and he began to receive said benefits in October 2003.  *See* Plaintiff's Objections to the Magistrate's Report-Recommendation at (unnumbered) 2.

The Social Security Act provides benefits to any individual who is "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). To qualify for such benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

In determining whether a claimant is entitled to benefits, the ALJ uses a five-step process to evaluate claims. *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). If so, the ALJ will not consider the claimant disabled. *See id.* However, if the claimant is not engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(c). If the claimant does suffer from a severe impairment, the third inquiry requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 404.1520(d). If so, the claimant is considered disabled. *See* 20 C.F.R. § 404.1520(d). Next, however, the ALJ must determine the claimant's residual functional capacity and ability to engage in past relevant work. *See* 20 C.F.R. § 404.1520(e). Finally, if the ALJ determines that the claimant cannot engage in his past relevant work, he must decide whether the claimant can perform other work that exists in the national economy. *See* 20 C.F.R. § 404.1520(f).

Within this framework, the claimant has the burden of proof as to the first four steps; and the Commissioner has the burden of proof as to the last one. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). In applying these five steps, the ALJ must consider the record in its entirety, including objective medical evidence

and the claimant's own subjective statements regarding his impairment and condition, and the claimant's background with respect to age, education, and work experience. *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (citation omitted).

In this case, Plaintiff argues that the ALJ erred (1) by not finding that Dr. Preston Dess was Plaintiff's treating physician; (2) by finding that there was substantial evidence to support his conclusion that Plaintiff's disability, while severe, did not meet or equal the severity level of any of the ailments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 404.1520(d); (3) by failing to evaluate properly Plaintiff's need to have ready access to bathroom facilities; and (4) by not crediting Plaintiff's testimony.

## B.   Treating Physician Rule

In the present case, the ALJ did not explicitly state that Dr. Dess did not qualify as one of Plaintiff's treating physicians; rather, he "[did] not give great weight to Dr. Dess's opinion since the claimant stated that he has not seen Dr. Dess since 1996 to 1998 although the report of Dr. Dess is in March 1999."[5] *See* Administrative Record ("AR") at 12. The ALJ further reasoned that substantial evidence contradicted Dr. Dess' medical opinion.

Under the Act's regulations, the ALJ is required to give the treating physician's opinion

---

[5] Plaintiff argues that the ALJ's assertion that "he has not seen Dr. Dees *[sic]* since 1996 to 1998" is not true. *See* Plaintiff's Objections to the Magistrate's Report-Recommendation at (unnumbered) 2. He asserts that "Dr. Dess performed a 60 minute detailed history and examination on 3/15/99" and that he met with Dr. Dess "two or three times . . . [the last time] . . . might have been [3/15/] '99." *See id.* As this Memorandum-Decision and Order makes clear, even if Plaintiff saw Dr. Dess two or three times, this does not change the outcome of the ALJ's determination.

-5-

on the nature and severity of a claimant's impairments controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record. . . ." 20 C.F.R. § 404.1527(d)(2).

The Second Circuit has defined a "treating physician" as "the physician who has engaged in the primary treatment of the claimant." *Green-Younger*, 335 F.3d at 106. Upon determining who is a claimant's treating physician, if the ALJ does not give that physician's medical opinion controlling weight, he must consider several factors to determine what degree of weight he should assign to that opinion.[6]

As a threshold matter, Dr. Dess, a psychiatrist, does not qualify as Plaintiff's "treating physician." The Administration gives controlling weight to the opinions of treating physicians because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a complainant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from . . . consultative examination or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). These considerations are wholly absent here. Even if the Court accepts as true Plaintiff's assertions that he met with Dr. Dess "two or three times" and that Dr. Dess performed a full sixty-minute examination of him, this treatment is still limited in nature. Under the regulation's rationale, such treatment is of lesser value than the treatment that a treating or

---

[6] These factors include (1) the length of the treatment relationship and the frequency of examination; (2) the nature and the extent of the treatment relationship; (3) the degree to which the medical opinion supports his conclusion; (4) the degree of consistency between the medical opinion and the entire record; (5) whether a specialist gave the medical opinion; and (6) any other factors or evidence which tend to support or contradict the medical opinion. *See* 20 C.F.R. § 404.1527(d)(1),(2).

primary physician provides and does not entitle Plaintiff to the controlling weight of the treating physician rule.

Alternatively, assuming that Dr. Dess was "the physician who has engaged in the primary treatment of [Plaintiff]," *see Green-Younger*, 353 F.3d at 106, his medical opinion is not entitled to controlling weight because it is "inconsistent with the other substantial evidence in [the] record," *see* 20 C.F.R. § 404.1527(d)(2). Dr. McCloskey, a treating source, found that Plaintiff's mental functioning had moderate limitations, *see* AR at 319-30; and, upon reevaluation, Plaintiff reported that he was relatively stable and showing improvement, *see id.* at 254. Moreover, although Dr. McCloskey diagnosed Plaintiff with a history of panic disorder associated with agoraphobia, major depression due to a general medical condition, and alcohol abuse in remission, he found that Plaintiff was cooperative, alert, fully-oriented, that his memory and insight were grossly intact, and that his judgement appeared fair.[7,8] *See id.* at 310.

---

[7] It is noteworthy that Dr. McCloskey made these findings on March 3, 2000, *see* AR at 310, a year after Dr. Dess made his findings on March 15, 1999, *see* AR at 237-38.

[8] Plaintiff asserts that, as evidence that Dr. McClosky's evaluation of him is consistent with Dr. Dess' opinion, Dr. McCloskey found that he has "moderate to severe limitations in all employment-related mental functioning." *See* Plaintiff's Objections to the Magistrate's Report-Recommendation at (unnumbered) 3 (citing T. 319). Plaintiff's characterization of Dr. McCloskey's evaluation is not entirely accurate. Dr. McCloskey actually noted under "Functional Limitations" that Plaintiff was "Moderately Limited" in walking, standing, sitting, lifting and carrying, pushing, pulling and bending, and "Very Limited" in seeing, hearing and speaking, and using stairs and climbing. With respect to mental functioning limitations, Dr. McCloskey noted that Plaintiff had "No Evidence of Limitation" regarding Plaintiff's history, or lack thereof, with addiction. However, Dr. McCloskey did note, under "Screening for Possible SSI Referral," that Plaintiff had "severe impairment(s)" because "anxiety attacks have been chronic [and] depression has persisted for at least several years." *See* AR at 320. These conclusions are not tantamount, as Plaintiff suggests, to a finding of moderate to severe limitations in all mental functioning regarding employment-related activities.

Moreover, Dr. Matthew Merrens, a consultative source, administered the Millon Inventory to Plaintiff and determined that, based upon Plaintiff's responses, he had "a broad tendency to magnify the level of experienced illness or personal inclination to complain and/or to be self-pitying." *See id.* at 12. He further "stated that 'Whatever impetus for the test taking response style, his scores may be somewhat exaggerated and this should be kept in mind when evaluating the interpretation in this assessment.'" *See id.* Although the Million personality record suggested major depression, another consultative source determined that Plaintiff's "post-traumatic stress disorder was in early remission." *See id.* at 12-13. Additional consultative evidence established that Plaintiff did not have a mental impairment other than slight limitations.[9] *See id.* at 582-83.

In light of the substantial evidence in the record that contradicts and mitigates the sweeping nature of Dr. Dess' opinion that Plaintiff is unable to sustain short- or long-term employment based upon mental limitations, the ALJ properly denied granting controlling weight to Dr. Dess' opinion under the treating physician regulation.[10] Accordingly, the Court adopts Magistrate Judge Homer's recommendation that the ALJ gave proper weight to all of the evidence in the record.

---

[9] It is well-established that consultative reports and the opinions of non-examining medical experts can constitute "substantial evidence and override the opinion of the treating physician pursuant to the treating physician regulations." *Punch v. Barnhart*, No. 01 Civ. 3355, 2002 WL 1033543, *12 (S.D.N.Y. May 21, 2002) (citing 20 C.F.R. § 404.157).

[10] The ALJ also relied upon Plaintiff's daily activities, which include doing laundry, shopping, cleaning, spending time taking his medications, watching TV, writing letters, and walking his dog, in determining that Dr. Dess' opinion did not merit great weight. *See* AR at 13. The ALJ further noted, in support of this finding, that Plaintiff completed "a straightforward multiplication and division problem." *See id.*

### C. Plaintiff's Ability to Return to His Past Work

In determining Plaintiff's residual functional capacity, the ALJ found that Plaintiff "is capable of performing his past relevant work as a *[sic]* assembly worker, as well as the other jobs cited by the vocational expert; and, therefore, he is not disabled within the meaning of the Social Security Act."[11, 12] *See* AR at 17. As a result, Plaintiff "has the residual functional capacity to perform a full range of light to medium work." *See id.* at 18. Moreover, the ALJ found that, based on the evidence, Plaintiff must have, among other things, access to restroom facilities. *See id.*

Under the regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Moreover, "[m]eduim work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Finally, if an ALJ

---

[11] The ALJ found that, based upon the Vocational Expert's testimony, Plaintiff "is also capable of performing work as a car prep person, insertion machine operator, inspector on a production line, and such jobs [that] exist in significant numbers in the local and national economies." *See* AR at 18.

[12] The ALJ also found that Plaintiff's IBS and adjustment disorder with anxiety, while severe, did not meet or equal the level of severity of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 404.1520(d). Since Plaintiff's objection focuses on the ALJ's finding that he could return to his past work, the Court need only address step four of the disability determination, i.e., whether Plaintiff can engage in his past relevant work. *See* 20 C.F.R. § 404.1520(e).

determines that a complainant can do "medium work," then "he or she can also do sedentary work and light work." *Id.*

Reviewing the record as whole, there is ample evidence to support the ALJ's determination that Plaintiff can return to his previous job as an assembly worker or to other light to medium work. On July 24, 2001, Dr. James Wright, a treating source, found that Plaintiff "could lift and carry up to 25 pounds frequently and up to 50 pounds occasionally during an entire 8-hour workday; sit up to 4-hours continuously. . . stand up to 2 hours continuously . . . and walk up to 1 hour continuously. . . ." *See* AR at 12. Moreover, Dr. Theodore Cohen, a consultative source, held that Plaintiff "could lift and carry 20 pounds frequently and has no limitation as to standing and/or walking, sitting, and pushing and/or pulling," a finding consistent with Dr. Wright's. *See id.* at 11-12. Together, these diagnoses place Plaintiff's capabilities squarely within the category of medium work.

As to Plaintiff's claim that the ALJ did not properly evaluate his IBS and related gastrointestinal problems, the record tells another story. On November 17, 1998, Dr. Howard Fritz, a treating source and a gastroneterology specialist, noted that, based upon "the discrepancy between self-reported diarrhea and firm stool noted on rectal examination," there was likely no "significant underlying disease process." *See id.* at 11. He further observed that Plaintiff's "symptoms are functional."[13] *See id.* Moreover, on July 24, 2001, Dr. Wright, in determining Plaintiff's residual functional capacity, found that the "test results have been negative regarding

---

[13] As the ALJ's written determination notes, "[i]t is also noteworthy that Dr. Fritz stated in a letter dated November 3, 2000 that in general, irritable bowel syndrome does not qualify for a disabling illness." *See* AR at 11.

the claimant's irritable bowel syndrome."[14] *See id.* at 12.  Additionally, Dr. Cohen noted "that there was no medical evidence that the claimant had multiple bowel movements per day . . . [and] that the claimant's irritable bowel diagnosis is made based on symptoms and there are no abnormal bowel findings."  *See id.*  Although Dr. Cohen agreed that Plaintiff has IBS, *see id.* at 574, he concluded significantly that "[Plaintiff] should be able to do substantial work [with] minimal restriction," s*ee id.*

Consistent with the weight of the evidence, the ALJ's determination that Plaintiff can do medium to light work, provided that he has access to bathroom facilities, is substantially justified.  Accordingly, the Court finds that the ALJ properly evaluated Plaintiff's IBS and other gastrointestinal problems and, therefore, adopts Magistrate Judge Homer's recommendation regarding this issue.[15]

---

[14] The Court notes that, previously, on June 9, 2000, Dr. Wright did find that Plaintiff's "longstanding irritable bowel syndrome required he have [a] toilet accessible at work."  *See* AR at 11.  This finding precedes Dr. Wright's contrary finding on July 24, 2001.  At any rate, the ALJ still held that, in the course of medium to light work, Plaintiff must have bathroom facilities available to him.  The ALJ's finding in this regard both supports his written determination and undercuts Plaintiff's claim that the ALJ did not properly consider Plaintiff's IBS.

[15] Plaintiff relies, in general, on *Harris v. Chater*, 998 F. Supp. 223, 225 (E.D.N.Y. 1998), for the proposition that, where a complainant has five bowel movements within a workday, he should be considered unemployable.  Plaintiff's reliance on *Harris* is misguided and overlooks the dissimilar evidence upon which the court relied in that case.  Unlike the present case, the *Harris* plaintiff had small bowel Crohn's disease and took medication for his condition. Moreover, not only did his "weight fluctuate[] widely," but he also "had persistent diarrhea, difficulty properly absorbing certain vitamins and minerals, and at times blood in his stool."  *Id.* at 224.  Additionally, "he was also seen by other treating physicians for episodes of arthritis and acute gout, frequent headaches, and recurrent cysts in his ears."  *Id.*  In this case, with the exception of Plaintiff's claim of unpredictable bowel movements as a result of his IBS, he does not claim to suffer from any of the other impairments that the *Harris* plaintiff endured. Moreover, the record in this case clearly establishes, by substantial evidence, that Plaintiff can do medium to light work; he is, therefore, not "unemployable."

**D.     The ALJ's Credibility Determination**

In evaluating the validity of a claimant's testimony about his symptoms, the Act prescribes a two-step process.  First, the ALJ must consider whether the claimant has a medically determinable impairment that could reasonably be expected to produce his alleged pain or symptoms.  *See* 20 C.F.R. §§ 404.1529, 416.929; S.S.R. 96-7p.  Second, if the ALJ determines that the claimant is impaired, he must then consider the "intensity, persistence, and limiting effects" of the claimant's symptoms.  *See id.*  If the ALJ determines that the objective medical evidence in the record does not support the claimant's statements about his symptoms or pain, the ALJ must then determine the claimant's credibility.  *See* S.S.R. 96-7p.  If there is substantial evidence to support the ALJ's credibility determination, then the court should defer to this finding.  *See Bomeisl v. Apfel*, No. 96 Civ. 9718, 1998 WL 430547, *6 (S.D.N.Y. July 30, 1998) (citations omitted).

Moreover, in assessing the claimant's credibility, the ALJ must consider the entire record and state his reasons for not crediting the claimant's testimony.  *See* S.S.R. 96-7p.  The regulations require that the ALJ consider not only objective medical evidence but also the claimant's (1) daily activities, (2) pain and other symptoms, (3) aggravating factors, (4) effects of medication, (5) treatment not involving medication, (6) non-treatment measures that the claimant uses to relieve pain and symptoms, and (7) other relevant factors related to limitations and restrictions resulting from pain or symptoms.  *See id.*

In this case, the ALJ determined that, pursuant to 20 C.F.R. § 416.929 and S.S.R. 96-7p, Plaintiff's subjective complaints regarding his IBS were inconsistent with the overall record and

might be exaggerated. The ALJ noted that, although Plaintiff testified that he was afraid to venture outside of his home because of his IBS, Plaintiff's own testimony about his "daily activities" undermined this assertion, indicating that he did not have "significant problems in memory or significant physical impairments." *See* AR at 17. Plaintiff testified that he walked to town one mile each way. *See id.* Moreover, Plaintiff testified that "he is able to shop, cook, clean, walk to town to shop or to go to a restaurant, watches TV, hitchhikes, pays his bills, gardens, does laundry, and writes letters." *See id.* As to Plaintiff's pain, other symptoms, and limitations and restrictions as a result thereof, the ALJ noted that Plaintiff's daily activities and mental status examinations indicated that "his memory is in tact and he has no symptoms of panic with his anxiety." *See id.* Also included in this analysis, the ALJ reasoned that, with respect to Plaintiff's subjective complaints, the Millon Inventory suggested possible "evidence of overstating by [Plaintiff.]" *See id.*

In light of the substantial evidence upon which the ALJ relied to determine that Plaintiff's testimony was likely exaggerated and having weighed it accordingly, the Court adopts Magistrate Judge Homer's finding that there is substantial evidence to support the ALJ's conclusion and, therefore, affirms the ALJ's decision in this regard.

## IV. CONCLUSION

After carefully considering Magistrate Judge Homer's Report-Recommendation and Order in this matter, Plaintiff's objections thereto, and the relevant parts of the record, as well as the relevant law, the Court hereby

**ORDERS** that Magistrate Judge Homer's December 27, 2005 Report-Recommendation and Order is **ADOPTED IN ITS ENTIRETY**; and the Court further

**ORDERS** that Defendant's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED**.

**Dated:** June 30, 2006
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge